## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ASHLEY JUSTUS,

                Plaintiff,

v.

EQUIFAX INFORMATION
SERVICES, LLC,

                Defendant.

**Case No.:** 2:25-cv-12267

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

   1. **FCRA, 15 USC § 1681,** *et seq.*

Plaintiff Ashley Justus ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* against Defendant Equifax Information Services, LLC ("Equifax" or "Defendant").

## I.      INTRODUCTION

1.    Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* by the Defendant. Plaintiff contends the Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff

1

from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.    Venue in this District is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.    PARTIES

4.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5.    Plaintiff is a natural person who resides in the city of Gaylord, Michigan.

6.    Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

7.    Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning

consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

8.      During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Michigan and conducted business in the State of Michigan on a routine and systematic basis.

9.      Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10.     During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11.    Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## IV.    **FACTUAL BACKGROUND**

12.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

13.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14.    Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15.    The FCRA is intended to ensure CRAs exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16.    Defendant, one of the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the

United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

17.     Defendant's consumer reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

18.     Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant, and other information must be independently gathered by Defendant, or acquired from third party providers, vendors or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

19.     Defendant also obtains information from other CRAs (who commonly share information).

20.    Defendant regularly seeks out and procures consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports Defendant sells to third parties for a profit.

21.    The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

22.    Defendant's unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

23.    Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

24.    The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

25.    The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

26.    FICO Scores are calculated using information contained in Defendant's consumer reports.

27.    FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

28.    FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

   a.   "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

   b.   The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

29.    Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendant in consumer reports.

30.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

31.     Defendant regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendant.

32.     A consumer's income, however, is not included in their consumer report; only their amount of debt is.

33.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

34.     A consumer who has obtained a bankruptcy discharge and has a consumer report that is reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting as having a zero-dollar balance.

35.     Defendant is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

36.     However, Defendant also knows that it is rare for a pre-petition debt to be reaffirmed or successfully challenged in an adversary proceeding.

37.     Further, Defendant knows that if reaffirmation agreements or adversary proceedings exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

38.     Additionally, information indicating that a specific debt has not been discharged, but instead was reaffirmed or successfully challenged through an adversary proceeding, is retrieved from the same sources from which Defendant voluntarily obtained consumer bankruptcy case information.

39.     Defendant also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

40.     However, Defendant regularly reports inaccurate information about consumers' debts after they receive a Discharge Order.

41.     Rather than follow reasonable procedures to assure maximum possible accuracy, as it is required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

42.     Defendant regularly publishes consumer information that conflicts with the information provided by data furnishers, included in Defendant's credit files,

contained in public records that Defendant regularly accesses, and/or sourced through Defendant's independent and voluntary efforts.

43.    Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate consumer reporting following a Chapter 7 discharge, including failure to report the discharge.

44.    Therefore, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures, which often produce inaccurate public record information,  balances, and account and payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiff*

45.    Plaintiff filed for a "no asset" Chapter 7 Bankruptcy on or about January 22, 2024 in the United States Bankruptcy Court for the Eastern District of Michigan, petition no. 24-20069-dob.

46.    Plaintiff received an Order of Discharge on or about April 23, 2024.

47.    Thereafter, Plaintiff was not personally liable for her dischargeable debts and these debts have a $0 balance after the bankruptcy discharge.

48.    Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

49.    The allegations in this complaint against Defendant are based on the reporting by Defendant in Plaintiff's May 23, 2025 consumer disclosure.

50.    Defendant reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the date of the last status update.

51.    Defendant failed to report Plaintiff's consumer bankruptcy information in the Public Records section and/or in one or more individual tradelines of Plaintiff's consumer reports.

52.    Notably, the other CRAs, TransUnion and Experian accurately reported Plaintiff's bankruptcy information in the Public Records sections of their respective reports, and in the individual tradelines of their respective reports.

53.    Upon information and belief, Defendant received notice of Plaintiff's bankruptcy discharge through its independent collection of Plaintiff's consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

54.    Defendant also obtains information from other CRAs (who commonly share information).

55.    Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through

bankruptcy," and with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

56.    Defendant should have reported Plaintiff's bankruptcy filing and discharge information in the public records section of Plaintiff's consumer reports.

57.    Defendant should have reported all of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero balance but did not.

58.    Defendant should have reported **all** of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and with a zero-dollar balance.

59.    Rather than accurately report the discharged debts, Defendant reported Plaintiff's accounts with numerous inaccuracies.

*Inaccuracies on Plaintiff's Consumer Report*

60.    On or about May 23, 2025 Plaintiff obtained a copy of her Equifax credit report.

61.    Upon review of her Equifax credit report dated May 23, 2025, Plaintiff observed several inaccuracies.

62.    As a preliminary matter, Equifax did not indicate that Plaintiff had filed for bankruptcy and received a discharge.

63.    The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on her Equifax consumer report.

64.    Defendant failed to report Plaintiff's bankruptcy discharge even though Defendant had all the correct personal information for Plaintiff in its database which matched the personal information reported in Plaintiff's Chapter 7 petition (e.g., full name, social security number, address).

65.    Notably, non-parties Trans Union and Experian accurately reported Plaintiff's public record bankruptcy filing and discharge based on the same information.

66.    Additionally, furnishers reported the Plaintiff's discharged/zero account balances, bankruptcy and discharge information to Equifax.

67.    Defendant knew or should have known that Plaintiff's bankruptcy was discharged.

68.    Defendant reported debts that were in fact discharged in bankruptcy and was therefore required to report these as discharged and with a zero-dollar balance. However, Defendant's failure to report Plaintiff's bankruptcy – filed in January 2024 and discharged in April 2024 – in Plaintiff's consumer report contributed to the numerous inaccuracies listed in Plaintiff's consumer report.

69.    Upon information and belief, the following furnishers of information accurately reported to Equifax that Plaintiff's accounts were included in Plaintiff's

bankruptcy discharge and had a zero-dollar balance after the bankruptcy filing/discharge, but Defendant rejected or revoked the data furnished to it and inaccurately overrode the reporting of the accounts.

70.     On Plaintiff's consumer disclosure, Defendant inaccurately reported Plaintiff's First Digital/SynVus account, ending with ************0226 and opened in October 2023 (the "First Digital Account"), which pre-dated Plaintiff's bankruptcy filing.

71.     The First Digital Account was discharged on or about April 23, 2024. Therefore, the First Digital Account should have been reported as discharged in bankruptcy.

72.     However, Defendant inaccurately reported the First Digital Account with a status of "Charge Off."

73.     Additionally, Defendant inaccurately reported Plaintiff's First Premier Bank account, ending with ************0074 and opened in October 2019 (the "First Premier Account"), which pre-dated Plaintiff's bankruptcy filing.

74.     The First Premier Account was discharged on or about April 23, 2024. Therefore, the First Premier Account should have been reported as discharged in bankruptcy.

75.     However, Defendant inaccurately reported the First Premier Account with a status of "Charge Off."

76.     Additionally, Defendant inaccurately reported Plaintiff's Comenity Bank/Maurice account, ending with ************4989 and opened in October 2019 (the "Comenity Account"), which pre-dated Plaintiff's bankruptcy filing.

77.     The Comenity Account was discharged on or about April 23, 2024. Therefore, the Comenity Account should have been reported as discharged in bankruptcy.

78.     However, Defendant inaccurately reported the Comenity Account with a status of "Charge Off."

79.     Additionally, Defendant inaccurately reported Plaintiff's Kashable LLC account, ending with **3419 and opened in April 2023 (the "Kashable Account"), which pre-dated Plaintiff's bankruptcy filing.

80.     The Kashable Account was discharged on or about April 23, 2024. Therefore, the Kashable Account should have been reported as discharged in bankruptcy.

81.     However, Defendant inaccurately reported the Kashable Account with a status of "Charge Off."

82.     Additionally, Defendant inaccurately reported Plaintiff's Simple Credit, Inc. account, ending with ***************6779 and opened in June 2020 (the "Simple Credit Account"), which pre-dated Plaintiff's bankruptcy filing.

83.    The Simple Credit Account was discharged on or about April 23, 2024. Therefore, the Simple Credit Account should have been reported as discharged in bankruptcy.

84.    However, Defendant inaccurately reported the Simple Credit Account with a status of "Repossession/Foreclosure" and a balance of $6,462.00.

85.    Thus, Defendant inaccurately reported Plaintiff's First Digital Account, First Premier Account, Comenity Account, Kashable Account, and Simple Credit Account (together the "Accounts").

86.    The status of "Charge Off" in the consumer credit industry means that a debt may still be owed, especially where, as here, the tradelines do not include bankruptcy coding such as included in and/or discharged in bankruptcy, or the tradeline indicates there is a balance and/or past due balance owed on the account before or after the "charge-off."

87.    The national consumer reporting agencies specifically acknowledge that a "charge-off" generally means consumers are still legally responsible for paying the debt.

88.    According to Equifax, a charge-off means the lender has written the account off as a loss and the account is closed to future charges. The timeframe is generally between 120 and 180 days after a consumer becomes delinquent, and a

charge-off does not mean that the consumer no longer owes the debt; the consumer is still legally obligated to pay the debt.

89.    Upon information and belief, Lexis-Nexis furnished information to all three CRAs, including Defendant, that indicated Plaintiff had filed for bankruptcy and received a discharge, but Defendant rejected or otherwise failed to report the data it received.

90.    Upon information and belief, some or all of the data furnishers of the foregoing tradeline provided information to all three CRAs, including Defendant, that indicated their corresponding accounts had been discharged in bankruptcy, but Defendant rejected or otherwise overrode the data it received.

91.    In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge are readily available to Defendant through multiple sources such as PACER, but, Defendant failed to review those sources or knowingly rejected them.

92.    In any event, Defendant knew or had reason to know that it reported information contradicted by notices received from third parties.

93.    Defendant inaccurately reported that Plaintiff owed money that she did not actually owe, and also reported an inaccurate account status and payment history.

94.    Defendant inaccurately reported an account with a balance owed after it was discharged in Chapter 7 Bankruptcy.

95. Defendant failed to indicate that the foregoing Accounts were discharged in Chapter 7 Bankruptcy.

96. Defendant also erroneously reported that the discharged Accounts were "Charge-Off" accounts after the discharge.

97. Notably, Trans Union and Experian, the two other national CRAs, reported Plaintiff's Accounts accurately on consumer reports produced after Plaintiff's discharge.

98. Defendant's reporting of the Accounts is patently inaccurate.

99. If not patently inaccurate, Defendant's reporting of the Accounts is materially misleading.

## *Plaintiff's Damages*

100. Plaintiff's DTI was negatively affected by Defendant's reporting of debt which Plaintiff does not owe, in turn negatively impacting Plaintiff's credit worthiness.

101. After Plaintiff's bankruptcy discharge, in or around February 2025, Plaintiff applied for credit with Aspire, but was denied due to Equifax's inaccurate reporting of the Accounts and Plaintiff's bankruptcy information.

102. Additionally, after Plaintiff's bankruptcy discharge, in or around May 2025, Plaintiff applied for credit with WebBank, but was denied due to Defendant's inaccurate reporting of the Accounts and Plaintiff's bankruptcy information.

103.   Defendant's inaccurate reporting of the Accounts, along with additional information belonging to Plaintiff, was published to potential creditors by Defendant during the process of Plaintiff's credit applications.

104.   Plaintiff's consumer credit file and consumer reports were also reviewed by numerous other entities after the discharge of her bankruptcy; those entities viewed the erroneous information published by Equifax.

105.   As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

106.   As a result of Defendant's inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred for a necessary review of Plaintiff's credit reports.

107.   Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

108.   Defendant's conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild her credit.

**V.   COUNT I**
**Violations of the FCRA, 15 U.S.C. § 1681e(b)**

109.   Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

110.   The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

111.   In this case, Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer receives a Discharge Order.

112.   Defendant received notice of Plaintiff's bankruptcy and discharge through public records, independent collection of consumer information directly obtained by Defendant through sources of consumer information such as Lexis Nexis, Defendant's own files, and information provided by data furnishers, yet Defendant rejected that information.

113.   Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

114.   Defendant's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

115.    Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

116.    Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records and its own files, including other furnishers that report to Defendant that the consumer's bankruptcy has been discharged.

117.    In this case, the inaccurately reported debts pertain to accounts Defendant knows pre-dated Plaintiff's Chapter 7 Bankruptcy, were included and discharged by Plaintiff's bankruptcy discharge, and should therefore have reported with a zero-dollar balance.

118.    Defendant's failure to maintain and employ reasonable procedures to assure the maximum accuracy of consumers' post-bankruptcy accounts is particularly egregious because Defendant regularly and voluntarily searches for consumer bankruptcy information to include in credit files.

119.    Defendant knew or should have known it is obligated, by the FCRA, to maintain and employ reasonable procedures to assure it reports maximally accurate consumer credit information.

120.    Defendant knew or should have known it is obligated, by the FCRA, to update consumer reports and individual tradelines after receiving notice of a Chapter 7 Bankruptcy Discharge.

121.    Defendant knew or should have known that the effect of a Discharge Order in a no-asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

122.    CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving the Defendant.

123.    Therefore, Defendant had ample notice of its obligations under the FCRA and its continued use of unreasonable procedures.

124.    If Defendant contends it did not have sufficient notice, Defendant must justify its own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including where consumers file for Chapter 7 Bankruptcy.

125.    Defendant regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties for a profit.

22

126.   In this case, Defendant knew or should have known about Plaintiff's bankruptcy filing and discharge and failed to include that information in Plaintiff's consumer disclosure and in consumer reports published to third parties.

127.   When Defendant received notice of Plaintiff's bankruptcy information, it had an obligation to ensure it reported Plaintiff's discharge and its effects with maximal accuracy.

128.   Unfortunately, Defendant willfully and consciously breached its duties as a CRA and deprived Plaintiff of her right to a fair and accurate consumer report.

129.   Despite knowledge of its legal obligations, Defendant violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure consumer report.

130.   In this case, Defendant failed to report Plaintiff's bankruptcy information, and reported the Accounts with statuses other than "discharged in bankruptcy," and reported the Simple Credit Account with a balance, instead of a zero-dollar balance.

131.   Defendant knew or should have known the information it reported about the Accounts was inaccurate.

132.   Defendant violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information Defendant

is reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

133.  Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

134.  Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

135.  Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

136.  Plaintiff suffers actual damages, including the above-referenced economic damages, a decreased credit score, loss of credit opportunities, credit denial and other financial harm caused by Defendant inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

137.  Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

138.  Defendant is a direct and proximate cause of Plaintiff's damages.

139.  Defendant is a substantial factor in Plaintiff's damages.

140.  Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant for the following:

(a)     Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

(b)     An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)     An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VII.  JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

//

RESPECTFULLY SUBMITTED this 24th day of July 2025

By: */s/Landon T. Maxwell*
Landon T. Maxwell, AZ #038439
Consumer Justice Law Firm PLC
8095 N 85th Way
Scottsdale, AZ 85258
T: (480) 626-1975
F: (480) 613-7733
E:lmaxwell@consumerjustice.com